U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

MAY 18 2009

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

JOHN FRUGE

versus                        CIVIL ACTION NO. 07-1025
                                              JUDGE TOM STAGG

B. J. SERVICES COMPANY, U.S.A
AND MIKE WARE

## MEMORANDUM ORDER

Before the court are three contested motions in limine. First, John Fruge ("Fruge") contends that evidence of collateral sources of compensation is inadmissible under the "Collateral Source Rule" and/or Rule 401 of the Federal Rules of Evidence. See Record Document 48. Second, B. J. Services Company, U.S.A. ("B. J. Services") and Mike Ware ("Ware")[1] contend that evidence of subsequent remedial measures is inadmissible under Rule 407. See Record Document 49. Third, B. J. Services and Ware contend that the expert testimony of Dr. Gary Nelson should be excluded as either unreliable, unhelpful to the trier

---

[1] On May 7, 2009, Mike Ware was dismissed from this lawsuit. See Record Document 61.

1

of fact, or based on erroneous interpretations of law. See Record Document 56.

## ANALYSIS

### A. The Collateral Source Rule.

Fruge contends that evidence of collateral sources of compensation (social security retirement, medicare, and workers' compensation benefits) is inadmissible under the collateral source rule and/or Rule 401 of the Federal Rules of Evidence. See Record Document 48. In Louisiana, the collateral source rule states that a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. See Bozeman v. State of Louisiana, 879 So.2d 692, 697 (La. 2004). The rule bars the introduction of evidence that a plaintiff has received benefits or payments from an independent source. See id.

In their memorandum in opposition, the defendants concede that evidence of collateral sources of compensation is generally inadmissible with regard to the computation of damages. See Record Document 53. However, they contend that Fruge's eligibility for social security and medicare benefits may be relevant to the issue of whether Fruge intends to return to the workforce. See id.

At trial, the jury should determine whether or not to award damages and the amount of such damages independently of any evidence of Fruge's collateral sources

of compensation. Such testimony might inappropriately prejudice the jury, resulting in a determination that the "plaintiff had already received sufficient compensation for his injury" based on collateral sources. Dumas v. Harry, 638 So.2d 283, 286 (La. App. 5th Cir. 1994). As evidence that Fruge is sixty-five years old and eligible for social security and medicare benefits may be relevant to the jury for limited purposes, the court will not impose a blanket limitation on such testimony. However, such testimony shall not be used to show that Fruge already receives certain forms of compensation for his injuries. As stated, Fruge's motion in limine regarding collateral sources of compensation is **GRANTED**.

**B.    Subsequent Remedial Measures.**

B. J. Services contends that Rule 407 of the Federal Rules of Evidence prohibits the introduction of any evidence of subsequent remedial measures to prove, inter alia, negligence, culpable conduct, or a defect. See Record Document 49. The rule recognizes a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety. See Fed. R.Evid. 407 advisory committee's note.

In its memorandum in opposition, Fruge acknowledges the well-founded evidentiary rule above and indicates that he will not introduce such evidence to prove negligence or fault. See Record Document 51. If counsel for Fruge believes

3

a development at trial warrants inclusion of such evidence, he should request permission to approach the bench for a sidebar conference. Accordingly, B. J. Service's motion in limine regarding subsequent remedial measures is **GRANTED**.

**C.    Dr. Gary Nelson.**

B. J. Services contends that the report and testimony of Dr. Gary Nelson, should be excluded under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993) because Dr. Nelson's opinions are unreliable, will not assist the trier of fact, and are based on erroneous interpretations of law. See Record Document 56. On the other hand, Fruge contends that "Dr. Nelson's opinions comport with the requirements of Daubert; his opinions will certainly assist the trier of fact in proving the defective nature and hazardous condition of the steps; and his opinions are not based on erroneous interpretations of law." Record Document 58 at 3.

B. J. Services contends that because Dr. Nelson did not visit the scene of the accident, did not take any measurements, and did not perform any tests, his opinions are unreliable and should be excluded. See Record Document 56 at 6. In forming his original opinion, Dr. Nelson relied on "photographic evidence" of the scene. Later, he received measurements of the steps made by the defendants' expert witness that affirmed his previous conclusions. Accordingly, Dr. Nelson's testimony

4

regarding the slope of the steps and its effect on their safety is based on reliable technical data and is therefore admissible.

However, Dr. Nelson's failure to perform a "coefficient of friction" analysis casts doubt upon his conclusion that the steps were too slippery. Before Dr. Nelson will be permitted to testify that the coefficient of friction of the steps at issue was "below .5 or .6 with a high degree of certainty," he must show that his conclusions are based on reliable and scientific methodology. Common sense suggests that as a slope becomes steeper, it also becomes more slippery.

As alluded to above, an interpretation of the measurements and angles of the steps will assist the jury in determining whether or not the steps were unreasonably dangerous. Dr. Nelson's conclusion that the steps were unreasonably dangerous because the angle of slope was greater than 1.19 degrees is admissible. The defendants may attack this conclusion on cross-examination. Mere speculation as to the friction coefficient of the steps will not add to the jury's analysis of the issue. The jury does not need an expert to testify that a steeper slope is more slippery. Thus, Dr. Nelson's testimony, as currently postured, is inadmissible on this point.

After review of <u>Melerine v. Avondale Shipyards, Inc.</u>, 659 F.2d 706 (5th Cir. 1981) and <u>Manchack v. Willamette Industries, Inc.</u>, 621 So.2d 649 (La.App. 2nd Cir. 1993), the court agrees with Fruge that violation of the Occupational Safety and

Health Act of 1970 ("OSHA") can be introduced to establish a standard of care that the trier of fact may accept or reject as it sees fit. As stated, B. J. Service's motion in limine to exclude the expert report and testimony of Dr. Gary Nelson is **GRANTED** in part and **DENIED** in part.

## CONCLUSION

Based on the foregoing analysis, Fruge's motion in limine regarding collateral sources of compensation (Record Document 48) is **GRANTED**; such evidence may only be introduced for the limited purpose discussed above. B. J. Service's motion in limine regarding subsequent remedial measures (Record Document 49) is **GRANTED**; such evidence is inadmissible. B. J. Service's motion in limine to exclude the expert report and testimony of Dr. Nelson (Record Document 56) is **GRANTED** in part and **DENIED** in part. Dr. Nelson may testify regarding the angle and slope of the steps; he may not speculate as to how slippery they were based on his opinion of their coefficient of friction.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 18th day of May, 2009.

JUDGE TOM STAGG